UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LESTER LAURAL JONES,<br><br>                Petitioner,<br><br>vs.<br><br>JAY CHRISTENSEN,<br><br>                Respondent. | Case No. 1:19-cv-00428-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

      Petitioner Lester Laural Jones (Petitioner) filed a Petition for Writ of Habeas Corpus challenging his state court sentence from a criminal action in the Seventh Judicial District Court in Madison County, Idaho. (Dkt. 3.) Respondent Jay Christensen responded with a Motion to Dismiss the Petition, which is now fully briefed. (Dkt. 12, 17.) All named parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 7.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

      When a petitioner's compliance with threshold procedural requirements is at issue, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989). Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus or any of its claims when "it plainly appears from the face of the petition and any attached exhibits

**MEMORANDUM DECISION AND ORDER - 1**

that the petitioner is not entitled to relief in the district court." The Court takes judicial notice of the records from Petitioner's state court proceedings, lodged by the parties. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

Having reviewed the parties' briefing and the record in this matter, including the state court record, the Court concludes that the Petition is untimely and non-meritorious, warranting dismissal.

## FACTUAL BACKGROUND

In 2011, Petitioner, then 48 years old, began flirting with a 16-year-old female, D.R., who was vulnerable after having suffered a recent break-up with her boyfriend. Petitioner's relationship with D.R. progressed into a sexual relationship when she was 17 years old. D.R. became pregnant and gave birth to a daughter in December 2011. Petitioner was named the father on the child's birth certificate, and Petitioner was involved with raising and providing for the child after she was born. Petitioner wanted to marry D.R., and her parents were amenable to that plan, but D.R. refused his proposal, saying she was not ready for marriage.

In 2012, an investigation ensued. Petitioner told the police investigator that he knew it was wrong to engage in a sexual relationship with a 17-year-old, "but felt she was close enough to being 18 that it would be OK." (State's Lodging A-1, p. 17.) The investigator told Petitioner "that he would be going to jail and explained to him the reasons why." (*Id.*) Petitioner already knew the reasons why. (*Id.*) As the sentencing judge aptly observed: "In society we owe it to our community to protect those that can't

protect themselves and by preying upon—whether you're an opportunist or a predator, by preying upon young people you're picking upon the very weakest in our society, people that society has a responsible to protect from those that would take advantage of them." (State's Lodging A-2, p. 46.)

Following the investigation, a criminal charge of statutory rape under Idaho Code § 18-61-1 disrupted Petitioner's plans to help support and raise his infant daughter. Because this was Petitioner's second sexual misconduct charge with a minor—the first was twenty years earlier with a 12-year-old female victim whom Petitioner similarly groomed—it would warrant a harsher prison sentence. Another complication was a persistent violator charge, a further threat of extended incarceration.

Petitioner was first represented by public defender R. James Archibald, who did not perform up to Petitioner's expectations. Petitioner fired Archibald and hired Josh Garner. With the advice of Garner, Petitioner pleaded guilty to statutory rape; in exchange, the State agreed not to seek the minimum mandated sentence of 15 years for a second sexual misconduct conviction and it dismissed the persistent violator charge. Judgment was entered on February 12, 2013. Petitioner was sentenced to a unified prison term of thirty years, with the first ten years fixed.

Petitioner filed a direct appeal action, challenging his sentence as excessive, and, much later, a Rule 35 motion, challenging his sentence as illegal. The Idaho Court of Appeals affirmed Petitioner's sentences in both actions, and the Idaho Supreme Court denied the petitions for review. *Idaho v. Jones*, Op. No. 40863, 2014 WL 280371 (Idaho

**MEMORANDUM DECISION AND ORDER - 3**

Ct. App. January 24, 2014); *Idaho v. Jones*, Op. No. 46574, 2019 WL 8129440 (Idaho Ct. App. August 30, 2019).

Petitioner also filed a post-conviction action asserting ineffective assistance of both of his attorneys as to their advice on whether to enter a guilty plea or take the case to trial, and as to their performance during sentencing. After summarily dismissing the claims against Archibald and holding an evidentiary hearing on Garner's performance, the state district court denied and dismissed the petition. The Idaho Court of Appeals affirmed the trial court's decision, and the Idaho Supreme Court denied review. *See Jones v. Idaho*, Op. No. 44529, 2017 WL 3033943 (Idaho Ct. App. July 18, 2017).

## STANDARDS OF LAW

1. **General Habeas Corpus Standard of Law**

Federal habeas corpus relief under 28 U.S.C. § 2254 is available to petitioners who show that they are held in custody under a state court judgment and that such custody violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a). Summary dismissal is appropriate where "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *See* Rule 4 of the Rules Governing Section 2254 Cases. *Id*. The following additional standards of law are applicable to the parties' arguments and the Court's analysis.

2. **Statute of Limitations Standard of Law**

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires a petitioner to seek federal habeas corpus relief within one year from several triggering dates specified in 28 U.S.C. § 2244(d)(1)(A)-(D). *One year* means 366 days, for example, from

**MEMORANDUM DECISION AND ORDER - 4**

January 1, 2000, to January 1, 2001. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (applying Federal Rule of Civil Procedure 6(a) to AEDPA).

The most common trigger is the first one, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). That date can be calculated as follows.

| Action Taken | Finality Occurs |
|---|---|
| No appeal is filed after state district court order or judgment | 42 days later, *see* Idaho Appellate Rule 14 |
| Appeal is filed and Idaho Court of Appeals issues a decision, but no petition for review is filed with the Idaho Supreme Court | 21 days later, *see* Idaho Appellate Rule 118 |
| Appeal is filed and Idaho Supreme Court issues a decision or denies a petition for review of an Idaho Court of Appeals decision, and Petitioner does not file a petition for writ of certiorari with the United States Supreme Court | 90 days later, *see* United States Supreme Court Rule 13 |
| After Idaho Supreme Court issues a decision or denies a petition for review, Petitioner files a petition for writ of certiorari to the United States Supreme Court, and the petition is denied | Date of denial |
| After Idaho Supreme Court issues a decision or denies a petition for review, Petitioner files a petition for writ of certiorari to the United States Supreme Court, the petition is granted, and the United States Supreme Court issues a decision | Date of decision |

In each instance above, "finality" is measured from entry of the final judgment or order, not from a remittitur or mandate, which are mere formalities. *Gonzales v. Thaler*,

**MEMORANDUM DECISION AND ORDER - 5**

132 S.Ct. 641, 653 (2012); *Clay v. United States*, 537 U.S. 522, 529 (2003); *Wixom v. Washington*, 264 F.3d 894, 898 n.4 (9th Cir. 2001).

AEDPA also contains a tolling provision that stops or suspends the one-year limitations period from running during the time in "which a properly filed application for State postconviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). Because this particular statutory provision applies only to "pending" actions, the additional 21-, 42- and 90-day time periods associated with the calculation of finality after direct appeal are *not* applied to extend the tolling periods for post-conviction actions. However, unlike direct appeal "finality," the term "pending" *does* extend through the date of the remittitur.[1]

The federal statute is *not* tolled between the date the direct appeal is "final" and the filing of a proper post-conviction application, or between post-conviction finality and any successive collateral review petition. *Id*. Each time statutory tolling ends, the statute of limitations does not restart at one year, but begins running at the place where it stopped before the post-conviction action was filed.

Once a federal statute of limitations has expired, it cannot be reinstated or resurrected by a later-filed state court action. *See Ferguson v. Palmateer*, 321 F.3d 820, 822 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed").

---

[1] *See Lawrence v. Florida*, 549 U.S. 327, 337 (2007). "Pending" is determined according to each particular state's law. In Idaho, an appellate case remains pending until a remittitur is issued. *See Cochran v. State*, 133 Idaho 205, 206, 984 P.2d 128, 129 (Idaho Ct. App. 1999).

**MEMORANDUM DECISION AND ORDER - 6**

3. **Equitable Tolling**

If a petition is deemed untimely, a federal court can hear the claims if the petitioner can establish that "equitable tolling" should be applied. In *Pace v. DiGuglielmo*, the Supreme Court clarified that, "[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." 544 U.S. 408, 418 (2005). In addition, there must be a causal link between the lateness and the extraordinary circumstances. The petitioner bears the burden of bringing forward facts to establish a basis for equitable tolling. *United States v. Marolf*, 173 F.3d 1213, 1318, n. 3 (9th Cir. 1999).

Ignorance of the law without more, is not grounds for equitable tolling. *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) (a petitioner's "inability correctly to calculate the limitations period" and "lack of legal sophistication" are not "extraordinary circumstance[s] warranting equitable tolling")).

4. **Actual Innocence**

The United States Supreme Court has determined that there is an "actual innocence" exception to the AEDPA statute of limitations, and that the exception applies where a petitioner meets the rigorous actual innocence standard of *Schlup v. Delo*, 513 U.S. 298 (1995). *McQuiggin v. Perkins*, 569 U.S. 383 (2013). "'Actual innocence means factual innocence, and not mere legal insufficiency.'" *Marrero v. Ives*, 682 F.3d 1190 (9th Cir. 2012) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

To make a showing of actual innocence under *Schlup*, a petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Perkins*, 569 U.S. at 400 (quoting *Schlup*, 513 U.S. at 327). This exception is to be applied only in the "extraordinary" or "extremely rare" case. *House v. Bell*, 547 U.S. 518, 538 (2006); *Schlup*, 513 U.S. at 320-21.

3. **Noncognizability Standard of Law**

The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a)). The United States Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)(citing *Estelle v. McGuire,* 502 U.S. 62, 67 (1991), and *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990)). Claims based on state law generally fail to state a federal habeas corpus claim upon which relief can be granted and are subject to dismissal. *See id*.

4. **Dismissal on the Merits Notwithstanding Procedural Defects**

The United States Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518 (1997); *cf. Franklin v. Johnson*, 290 F.3d 1223 (9th Cir. 2002) ("appeals courts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar"); *Hudson v. Jones*, 351 F.3d 212 (6th Cir. 2003); *cf.* 28 U.S.C. § 2254(b)(2) ("An application for a

**MEMORANDUM DECISION AND ORDER - 8**

writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

### 5. De Novo Merits Review Standard of Law

The United States Supreme Court has held that federal courts are not required to address a procedural issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518 (1997); *cf. Franklin v. Johnson*, 290 F.3d 1223 (9th Cir. 2002) ("appeals courts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar"); *cf. Hudson v. Jones*, 351 F.3d 212 (6th Cir. 2003); *cf.* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Under de novo review, if the factual findings of the state court are not unreasonable, the Court must apply the presumption of correctness in 28 U.S.C. § 2254(e)(1) to facts found by the state courts. *Pirtle*, 313 F.3d at 1167. As in the pre-AEDPA era, a district court can draw from circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

### 6. Harmless Error Standard of Law

Generally, even if a constitutional error occurred, a petitioner is entitled to federal habeas relief only if he "can establish that [the error] resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Under the *Brecht* standard, an error is harmful, and habeas relief must be granted, only if the federal court has "grave doubt

**MEMORANDUM DECISION AND ORDER - 9**

about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation marks omitted). However, some types of claims "are analyzed under their own harmless error [or prejudice] standards, which can render *Brecht* analysis unnecessary." *Jackson v. Brown*, 513 F.3d 1057, 1070 (9th Cir. 2008). Ineffective assistance of counsel claims are included in this latter category. *Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009).

## TIMELINESS DISCUSSION

The Idaho Supreme Court denied Petitioner's direct appeal petition for review on February 24, 2014. (State's Lodging B-6.) Petitioner's state judgment of conviction became final on May 25, 2014, ninety days after his deadline for filing a petition for writ of certiorari expired. The federal habeas corpus one-year statute began running on that date.

Petitioner filed a post-conviction action on February 19, 2015 (mailbox rule). (State's Lodging C-1, p. 6.) Not to include the filing date, at that time he had used 270 days of his federal statute of limitations period, and the remaining 96 days were statutorily tolled until the post-conviction action was final, on August 11, 2017. The federal statute began running again on August 12, 2017, and ended 96 days later, on November 15, 2017, unless another state court action, properly-filed, was filed to stop expiration of the limitations period.

Petitioner filed a Rule 35 motion for correction of sentence on April 27, 2018. Because the federal statute of limitations had already expired by that date, that action did not toll the federal statute.

Petitioner raises no tolling or actual innocence arguments in his response. The Court finds no grounds for tolling in its own review of the record. Petitioner admits to the sexual relationship and to fathering the child with the minor victim. Though he may disagree with the law, according to the law he is not actually innocent of the crime. Accordingly, the Court concludes that his Petition for Writ of Habeas Corpus is subject to dismissal, with prejudice, on statute of limitations grounds.

## MERITS DISCUSSION

Alternatively, the Court concludes that Petitioner's four claims are subject to denial on the merits. Petitioner's first three claims all arise from the same set of facts. Therefore, the Court will address them together. Before sentencing, the trial court ordered that a presentence investigation and report (PSI) and a psychosexual evaluation be completed prior to sentencing. (State's Lodging A-2, p.19.) At sentencing, the trial court said that, with Petitioner's objection noted as to a beastiality incident described in the psychosexual report, it planned to "rely upon the balance of the presentence investigation and psychosexual evaluation in formulating the sentence." (*Id*., p. 27.)

Petitioner asserts that the PSI report in his sentencing proceedings was "unconstitutionally obtained," because defense counsel and the trial court failed to advise him that he did not have to speak to the presentence investigator. Petitioner avers that he would have invoked his right to remain silent and would not have fully participated in the

MEMORANDUM DECISION AND ORDER - 11

presentence investigation had he known it is was possible to invoke his Fifth Amendment right at sentencing. He also argues that the state district court lacked subject matter jurisdiction to sentence him because it considered the unconstitutionally-obtained sentencing report. He further argues that the situation amounted to a "structural error" in the proceedings. He demands re-sentencing, with new counsel and a new PSI. (Dkt. 3-1, p. 17.) Petitioner's claim fails for the following reasons.

First, in his Response, Petitioner asserts: "I told my attorney that I never talked to a P.S.I. investigator. I asked my attorney how do I know what the P.S.I. investigator said if I am not allowed to read my P.S.I." (Dkt. 17, p. 2.) If it is true that Petitioner never spoke to the PSI investigator, then he has failed to provide facts to state a claim that his Fifth Amendment (or other constitutional) rights were violated by (1) defense counsel's alleged failure to advise Petitioner that he could remain silent; or (2) the trial court's failure to advise him of the same.

Second, this Court acknowledges, as an initial matter, that Petitioner is correct in asserting that that the trial court did not advise Petitioner that he could opt out of the presentence investigation process. The change of plea transcript contains this colloquy:

> Q. Do you understand if you plead guilty you'll have to participate in a presentence investigation?
>
> A. Yes, Your Honor.

(State's Lodging A-2, p. 14.)

However, Petitioner is incorrect in asserting he has a legal "right" to have counsel to advise him during the presentence investigation process. Several federal courts have

**MEMORANDUM DECISION AND ORDER - 12**

held that a routine presentence investigation is not a critical stage of the proceedings in a non-capital case, including the United States Court of Appeals for the Ninth Circuit, *see United States v. Benlian*, 63 F.3d 824, 827 (9th Cir. 1995). The Idaho Court of Appeals has reached the same conclusion. *See Stuart v. State*, 145 Idaho 467, 470, 180 P.3d 506, 509 (Ct. App. 2007)(collecting national state and federal cases). Nor does the Court find any federal case of precedential value that supports Petitioner's argument that he has a constitutional "right" to be notified that he can opt of the presentence review process. Therefore, no constitutional rights were violated, and no "structural error," that is, error of a constitutional magnitude, occurred when he was not so advised.

Third, the transcript makes it clear that—where Petitioner did have a legal right to opt out of the psychosexual evaluation—the trial court thoroughly explained that right to him, and he acknowledged he understood.

At the change of plea hearing, the following colloquy took place:

> Q. And you understand that [the PSI] will include a lot of background about your life and it will also include any prior criminal record you may have?
>
> A. Yes, Your Honor.
>
> Q. Additionally, do you understand that since this is a sex offense I'm going to order a psychosexual evaluation?
>
> A. Yes, Your Honor.
>
> Q. And do you understand that will disclose to the Court a great deal of information about your past sexual history and potential sexual problems that you might have?
>
> A. Yes, Your Honor.

**MEMORANDUM DECISION AND ORDER - 13**

> Q. Do you understand that you have certain rights on a psychosexual evaluation concerning whether or not you've answered questions about acts outside of those charged in this case?
>
> A. Yes, Your Honor.
>
> Q. Okay. At this time I' going to advise you of those rights and if you have any questions I'll let you visit with your attorney about it.
>
> Because of an Idaho Supreme Court ruling in the case of *State versus Estrada* – excuse me, *Estrada versus State*, you have a Fifth Amendment right to remain silent during your psychosexual evaluation on questions pertaining to other crimes you may have committed. Anything you say in the evaluation could be used against you at sentencing.
>
> You also have a Sixth Amendment right to counsel regarding your decision as to whether or not you should remain silent during your evaluation. Now, the sentence that I fashion in this case will be largely based upon my assessment of the risk you are to society. That assessment will also be made by the psychosexual evaluator, which I will certainly consider but not be bound by. If you don't fully cooperate it will be difficult for both the evaluator and for the Court to fully evaluate your risk.
>
> However, you do have certain rights and I want to make sure you understand those.
>
> Have you discussed these rights with Mr. Garner?
>
> A. Yes, Your Honor.
>
> Q. Okay. Are you satisfied with his advice to you on this matter?
>
> A. Yes, Your Honor.

State's Lodging A-2, pp. 14-16.

**MEMORANDUM DECISION AND ORDER - 14**

Because the trial court itself advised Petitioner of his Fifth Amendment right to remain silent during the psychosocial evaluation, he cannot show any prejudice that occurred even if his counsel did not so notify him.

Furthermore, the Court notes that Petitioner's very experienced state post-conviction counsel, Craig Durham, requested and received access to the PSI report during post-conviction proceedings. (See State's Lodging C-1, pp. 37-38, 75.) Therefore, Petitioner did have access to the PSI report at that time, contrary to his position in this matter that he has never had an opportunity to access the PSI report.

Even on post-conviction review, neither Petitioner nor his counsel identified anything in the PSI report that was prejudicial to Plaintiff to the degree that it would have satisfied the prejudice prong of the ineffective assistance of counsel test or would have been considered harmful error of the trial court warranting a new sentencing hearing. *See Neder v. United States*, 527 U.S. 1, 18 (1999) (acknowledging that the violation of the Fifth Amendment's guarantee against self-incrimination is subject to harmless error review).

Finally, the sentencing court's consideration of the PSI report was proper and did not deprive that court of subject matter jurisdiction over Petitioner's criminal sentencing proceedings. In the Idaho state judiciary, district courts have original jurisdiction over all cases and proceedings in law and in equity, including criminal cases. Idaho Code § 1-705; Idaho Const. art. V, § 20. An "information, indictment, or complaint alleging an offense was committed within the State of Idaho confers subject matter jurisdiction upon

**MEMORANDUM DECISION AND ORDER - 15**

the court." *State v. Rogers*, 91 P.3d 1127, 1132 (2004). Once a court acquires jurisdiction, it continues until extinguished by a designated event. *McHugh v. McHugh*, 766 P.2d 133, 134 (1988). The trial court's jurisdiction to amend or set aside a judgment expires once the judgment becomes final upon appeal or expiration of the time for appeal. *State v. Jakoski*, 79 P.3d 711, 714 (2003). "Subject matter jurisdiction does not depend on the particular parties in the case or on the manner in which they have stated their claims, nor does it depend on the correctness of any decision made by the court." *Rogers*, 91 P.3d at 1131. Therefore, Petitioner has stated no legal or factual basis to support his claim that the state district court lost subject matter jurisdiction to sentence him when it considered the PSI report.

Petitioner's fourth claim is that the state courts "abused their authority by failing to re-sentence" him. (Dkt. 3, p. 9.) Petitioner does not cite a federal constitutional provision as the theory behind this claim. A claim that a state court abused its discretion regarding the application of a state law is an issue of state law that is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. at 480 ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"), quoting *Lewis v. Jeffers*, 497 U.S. at 780.

Construing the claim as an Eighth Amendment cruel and unusual punishment claim, the Court concludes that such a claim fails because Petitioner has not alleged that he was sentenced to a determinate or indeterminate term beyond the statutory limits for his crime.

**MEMORANDUM DECISION AND ORDER - 16**

Further, Petitioner has not shown that his sentence is constitutionally excessive under existing precedent. In *Rummel v. Estelle*, 445 U.S. 263 (1980), the Supreme Court held that a sentence of life imprisonment with an opportunity for parole after twelve years did not constitute cruel and unusual punishment in a situation where a defendant with two prior felony convictions was convicted of obtaining $120.75 by false pretenses. In *Hutto v. Davis*, 454 U.S. 370, 372 (1982), the Supreme Court noted that it had "never found a sentence for a term of years within the limits authorized by statute to be, by itself, a cruel and unusual punishment."

Later case law confirmed that same principle. *See, e.g., Harmelin v. Michigan*, 501 U.S. 957, 965 (1991) (affirming a Michigan court judgment sentencing the defendant to a statutory mandatory life sentence without the possibility of parole for possessing more than 650 grams of cocaine, and rejecting a disproportionate sentence argument). While the case of *Solem v. Helm*, 463 U.S. 277 (1983), applied a disproportionality analysis, such an analysis has been applied only to prison terms of life without parole.

Here, the sentencing court cited the following in support of the sentence of ten years fixed with twenty years indeterminate:

- The psychosexual evaluator had a difficult time evaluating Petitioner's risk to reoffend because Petitioner "would explain why certain things happened in a certain way and in [the evaluator's] view, it just didn't add up.
- There was grooming of the victim.
- The polygraph showed at least one deception.
- His cognitive patterns showed he was narcissistic, manipulative, a risk taker, impulsive, exhibitionist, and self-indulgent.

**MEMORANDUM DECISION AND ORDER - 17**

- He is not a predator, but an opportunist.

- His Molester Composite and Static 99 scores combined showed him at a moderate/high risk.

- Under Axis I of the DSM-IV, he was diagnosed with sexual abuse of children.

- The court weighed protection of society equally with punishment, since this was Petitioner's second sex crime against a child.

- The Court also voiced concern about Petitioner having contact with his young daughter, given his two prior sex offenses against minor females.

(State's Lodging A-2, pp. 41-48.)

Based upon these factors, there is sufficient evidence in the record to support the trial court's sentence. No Eighth Amendment violation has occurred.

4. **Conclusion**

Petitioner filed his Habeas Corpus Petition too late. Respondent's Motion for Summary Dismissal will be granted on that basis. However, even if Petitioner had filed his Petition in time, his claims do not warrant relief, as set forth above. This entire case will be dismissed with prejudice.

## ORDER

**IT IS ORDERED:**

1. Respondent's Motion for Summary Dismissal (Dkt. 12) is GRANTED.

2. The Petition for Writ of Habeas Corpus (Dkt. ) is DISMISSED with prejudice.

3. The Court finds that its resolution of this habeas matter is not reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C.

**MEMORANDUM DECISION AND ORDER - 18**

§ 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: March 31, 2021

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

MEMORANDUM DECISION AND ORDER - 19